[No. B119842. Second Dist., Div. Five. July 27, 1999.]

INTER-MODAL RAIL EMPLOYEES ASSOCIATION, Plaintiff and Appellant, v.
BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY et al., Defendants and Respondents.

**[Opinion certified for partial publication.†]**

† Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.2 and III.3.

920

**COUNSEL**

Girardi & Keese, Thomas V. Girardi, James B. Kropff; Midwest Center for Law & Justice, Richard E. Schwartz and James E. Parrot for Plaintiff and Appellant.

Hill, Farrer & Burrill, Ronald W. Novotny and Jack R. White for Defendant and Respondent Burlington Northern and Santa Fe Railway Company.

Jeffer, Mangels, Butler & Marmaro, Patrick W. Jordan and Neil O. Andrus for Defendants and Respondents In-Terminal Services, Inc., and Mi-Jack Products, Inc.

**OPINION**

**GODOY PEREZ, J.**—Appellant Inter-Modal Rail Employees Association appeals from judgment on the pleadings entered for respondents The Burlington Northern and Santa Fe Railway Company, In-Terminal Services, Inc.,

and Mi-Jack Products, Inc. After review, we reverse and remand for further proceedings.

## I. PROCEDURAL AND FACTUAL BACKGROUND[1]

In this action for wrongful termination and unfair business practices, the plaintiff and appellant is the Inter-Modal Rail Employees Association (hereafter IMREA), and the defendants and respondents are The Burlington Northern and Santa Fe Railway Company (hereafter BNSF), Mi-Jack Products Inc., and its subsidiary In-Terminal Services (these last two respondents hereafter being referred to as ITS). IMREA is a nonprofit mutual benefit corporation formed for the purposes of its members' mutual support and education, those members being former employees of ITS.[2]

Respondent BNSF owned and operated a train rail yard in Los Angeles known as the Hobart Yard. In April 1990, respondent ITS entered into a contract with BNSF to perform the intermodal work at Hobart Yard. Intermodal work involves loading and unloading cargo and containers to and from railcars and trucks. Within two months of assuming the contract, ITS's unsafe practices resulted in the first intermodal employee fatality at Hobart Yard in 20 years. As job safety thereafter continued to deteriorate, causing more deaths and injuries among ITS employees, the workers formed IMREA in 1992 to complain to government agencies about the hazardous conditions. Among IMREA's complaints were BNSF's failure to maintain "clear zones" around tracks as railcars were being loaded and unloaded; BNSF's refusal to paint and maintain "safe-distance markers" next to train tracks to guide employees in positioning their loading cranes; BNSF's and ITS's attempt to eliminate "spotters" who assisted crane operators in proper loading of cargo containers; and unsafe movement of locomotives onto tracks where employees were working. The complaints triggered investigations by various governmental agencies including the state and federal Occupational Safety and

---

[1]We recite the facts as they are alleged in the complaint without passing on their veracity.

[2]ITS argues for the first time in its respondent's brief that IMREA lacked standing to pursue this litigation on its members' behalf. Given the undeveloped record below on this point, we decline to address it here and instead leave it for further development after remand. We do note, however, that the individual members of IMREA executed assignments and powers of attorney authorizing IMREA to act on their behalf, IMREA alternatively sought certification as the class representative for the plaintiff employees if the court found IMREA was not a proper party, and IMREA filed a proposed third amended complaint which named the individual employees as plaintiffs. (See Code Civ. Proc., § 473 [amendments to pleadings liberally allowed]; *California Air Resources Bd.* v. *Hart* (1993) 21 Cal.App.4th 289, 300 [26 Cal.Rptr.2d 153] ["Code of Civil Procedure section 473 has been construed to permit amendment to substitute a plaintiff with standing for one who is not a real party in interest"].)

Health Administrations, which imposed substantial fines against respondents and ordered them to adopt safer work practices.

In June 1994, an ITS employee was killed and another severely injured when a train moving in violation of safety rules crushed them against a second train. IMREA sent a letter to the president of BNSF complaining about the accident, which BNSF promised to investigate. After its investigation, BNSF asked ITS to improve its safety practices. ITS's response was twofold. First, it adopted safer practices, which led to a "record level of productivity" among its employees. Second, it gave notice of its intention to terminate its contract in four months, notice of which it concealed from its employees.

In January 1995, ITS's contract expired and a new company, PARSEC, replaced ITS at the Hobart Yard. Furthermore, in retaliation for their safety complaints, ITS terminated its employees "en masse" and, at BNSF's urging, PARSEC did not hire any former·ITS employees. Instead, PARSEC recruited more docile employees willing to work at substandard wages who would not insist on job safety.

Based on the foregoing events, IMREA filed a complaint in February 1996 against ITS and BNSF alleging four causes of action. The first two causes of action were against ITS for retaliatory discharge. The first cause of action alleged ITS violated the California Occupational Safety and Health Act (Lab. Code, § 6300 et seq;[3] hereafter Cal-OSHA) by not providing proper safety equipment (§§ 6401, 6403) and a safe and healthful jobsite (§§ 6400, 6402, 6404). It further alleged ITS violated Cal-OSHA by terminating its employees for complaining about such violations. (§§ 6310 [barring discrimination against employee who complains about health and safety violations], 6311 [no employee shall be discharged for refusing to work in violation of occupational health or safety standards].) The second cause of action alleged that ITS's mass termination of its employees for complaining about job hazards violated public policy prohibiting retaliation against workers who insist on a safe workplace.

The third and fourth causes of action were against both respondents. The third cause of action alleged ITS and BNSF unlawfully conspired to discharge ITS's employees for complaining about unsafe working conditions. The fourth cause of action alleged (1) the mass termination constituted an unfair trade practice in violation of the Unfair Practices Act (Bus. & Prof.

---

[3]All further statutory references are to the Labor Code unless otherwise indicated.

Code, § 17000) because the competitors of ITS's replacement, PARSEC, were undercut by PARSEC's substandard wages and flouting of safety requirements, and (2) the four-month concealment of ITS's intent to terminate its contract was a "dishonest, deceptive, [and] fraudulent" practice in violation of the Unfair Competition Act. (Bus. & Prof. Code, § 17200).

ITS moved for judgment on the pleadings (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii)). It characterized the gravamen of IMREA's complaint as workers being fired for banding together to complain about safety violations, which, according to ITS, charged it with an "unfair labor practice" directed against "protected concerted activity" under the National Labor Relations Act (hereafter the NLRA) (29 U.S.C. § 151 et seq.). ITS argued the National Labor Relations Board had exclusive jurisdiction over the adjudication of unfair labor practices, thereby depriving the trial court of subject matter jurisdiction.

BNSF also moved for judgment on the pleadings. It argued IMREA could not state a cause of action for conspiracy to wrongfully discharge because BNSF was not the terminated workers' employer and therefore owed them no legal duty which could support a conspiracy claim. BNSF further argued IMREA could not state a cause of action for unfair business practices because conspiring to wrongfully discharge employees—the only conduct in which BNSF was supposed to have engaged—is not the sort of anti-competitive behavior outlawed by the unfair practices statutes.

As these motions were pending, IMREA sought the court's leave to file a third amended complaint. The proposed amendments added BNSF to the first and second causes of action for wrongful termination. In addition, they clarified certain drafting ambiguities in the third cause of action against BNSF for conspiracy. Finally, they dropped ITS from the fourth cause of action for unfair business practices.

The court thereafter granted both respondents' motions for judgment on the pleadings. In ruling on the motions, the court took into account the revised allegations of the third amended complaint. Nonetheless, it found ITS was entitled to judgment on the pleadings because IMREA's wrongful termination claims were "committed by federal law to the exclusive jurisdiction of the National Labor Relations Board." The court further found IMREA could not state a claim against BNSF for wrongful termination because BNSF was not the fired workers' employer and therefore Cal-OSHA did not apply. In addition, the court concluded that the purported mass firing was not anticompetitive conduct barred by the unfair practices statutes.

Finally, the court denied IMREA leave to file a third amended complaint because the proposed changes did not remedy the complaint's defects. The court therefore dismissed the complaint, and this appeal followed.

## II. STANDARD OF REVIEW

■ "A motion for judgment on the pleadings is analogous to a general demurrer. [Citation.] The task of this court is to determine whether the complaint states a cause of action. All facts alleged in the complaint are deemed admitted, and we give the complaint a reasonable interpretation by reading it as a whole and all of its parts in their context. [Citations.] We are not concerned with a plaintiff's possible inability to prove the claims made in the complaint, the allegations of which are accepted as true and liberally construed with a view toward attaining substantial justice. [Citations.]" (*Lance Camper Manufacturing Corp.* v. *Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 198 [51 Cal.Rptr.2d 622].)

## III. DISCUSSION

### 1. *Dismissal of ITS Because of NLRA Preemption*

The NLRA establishes the right of workers to organize and engage in collective action concerning conditions of employment. (29 U.S.C. § 157 ["Employees shall have the right to self-organization . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . ."].) The NLRA further establishes it is unlawful for employers to interfere with the exercise of those rights, interference being deemed an "unfair labor practice." (29 U.S.C. § 158 ["It shall be an unfair labor practice for an employer— [¶] (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 . . ."].) ■ Ordinarily, the National Labor Relations Board (NLRB) has exclusive jurisdiction over controversies involving unfair labor practices. (*San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 244-245 [79 S.Ct. 773, 779-780, 3 L.Ed.2d 775].) An exception to NLRB exclusivity exists, however, for matters which "touch interests so deeply rooted in local feeling and responsibility" that preemption is not found unless Congress plainly intended it. (*Id.* at p. 244 [79 S.Ct. at p. 779].) As was explained in *Platt* v. *Jack Cooper Transport, Co., Inc.* (8th Cir. 1992) 959 F.2d 91 (a decision on which ITS heavily relies), the ". . . broad preemption rule is subject to an exception when the arguably protected or prohibited activities 'touch interests so deeply rooted in local feeling and responsibility that, in the absence

of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.' [Citation.] Under this exception, the Supreme Court has declined to preempt a variety of state law claims even though they arose in a labor law context [involving, for example,] trespass by peaceful picketing . . . intentional infliction of emotional distress . . . [and] defamation . . . ." (*Id.* at pp. 94-95.)

■ Here, the trial court found it lacked subject matter jurisdiction because, according to the court, federal law committed the health and safety matters at issue to the exclusive jurisdiction of the NLRB based on the workers having collectively pursued their complaints as "a concerted action," such concerted action being protected by the NLRA. The court reasoned, "How can you have 200 people, a mass firing of 200 people, and say that's not concerted action?" IMREA contends the court erred in finding federal preemption of its health and safety claims because the court ignored the exception for local concerns. We agree.

*Balog* v. *LRJV, Inc.* (1988) 204 Cal.App.3d 1295 [250 Cal.Rptr. 766] controls here. There, a supervisor was fired for resisting unlawful antiunion activities and for refusing to violate California health and safety regulations. (*Id.* at p. 1304.) The trial court dismissed his wrongful termination claim, finding the NLRA preempted it. In language dispositive here, the appellate court reversed. It stated that the plaintiff "has alleged that he was fired for five distinct reasons, only one of which constitutes an unfair labor practice under the NLRA[—that being his refusal to engage in anti-union acts]. The other reasons all involve various violations of California health and safety regulations, which are not even 'arguably' unfair labor practices, as they in no way implicate collective bargaining or unionization. [The employer's] alleged conduct in terminating [the plaintiff] for refusing to violate these regulations, and for thereby refusing to endanger the health and safety of California workers, is clearly conduct which *touches interests deeply rooted in local feeling and responsibility*, and which is, if of any concern of the NLRA, of only peripheral concern. Therefore, to the extent that [the plaintiff's] causes of action are premised on such conduct, they are not preempted by the [National Labor Relations] Act." (*Ibid.*, italics added, orginal italics omitted.)

The decision by the Court of Appeals for the Ninth Circuit in *Paige* v. *Henry J. Kaiser Co.* (9th Cir. 1987) 826 F.2d 857, confirms *Balog* was correctly decided. There, two employees claimed wrongful termination after being discharged for complaining about Cal-OSHA safety violations. The Ninth Circuit found no federal preemption of the employees' claims.

 It explained in a passage which we recite at length that "Congress's main goal in enacting the NLRA was to establish an equitable bargaining process . . . . State laws which set minimum safety standards do not interfere with the bargaining process itself. . . . In *Metropolitan Life v. Mass.* [(1985) 471 U.S. 724 [105 S.Ct. 2380, 85 L.Ed.2d 728]], the Supreme Court considered the legislative history of the NLRA and made the following statement: 'Most significantly, there is no suggestion in the legislative history of the Act that Congress intended to disturb the myriad state laws then in existence that set minimum labor standards, but were unrelated in any way to the processes of bargaining or self-organization. To the contrary, *we believe that Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety.* The States traditionally have had great latitude under their police power to legislate as " 'to the protection of the lives, limbs, *health,* comfort, and quiet of all persons.' " ' [Citation.] *'States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.* Child labor laws, minimum and other wage laws, *laws affecting occupational health and safety . . .* are only a few examples.' [Citation.] [¶] Thus, the Supreme Court recognized that Congress did not intend to preempt all local regulations that touch or concern the employment relationship." (826 F.2d at pp. 863-864, original italics.)

The *Paige* court further explained, "Congressional intent not to preempt local health and safety regulations, which might arguably infringe upon federal labor law, also can be discerned from the federal Occupational Safety and Health Act of 1970 ('Fed/OSHA'), [citation]. Congress included a provision in Fed/OSHA whereby the federal government allowed individual states to regulate health and safety, provided the states adopted a scheme of regulation and enforcement at least as vigorous as that required by Fed/OSHA. [Citation.] Acting pursuant to this invitation, California enacted the California Occupational Safety and Health Act of 1973 ('Cal/OSHA'), Labor Code[section] 6300 et seq., . . . [¶] . . . A number of statutes analogous to Cal/OSHA have withstood this preemption analysis in the Supreme Court. [¶] . . . [¶] The core analysis in these cases is that none of these statutes interfere with the purposes of the NLRA: the establishment of an equitable bargaining process. Likewise, Cal/OSHA and actions for wrongful discharge in violation of Cal/OSHA do not *interfere with the* bargaining process. As it is uniquely within the states' police powers to legislate for the health and safety of their citizens, and such regulation does not interfere with the NLRA's goals, federal law does not preempt such statutes." (826 F.2d at pp. 864-865.) The *Paige* court thus concluded,

"Therefore, in light of Congressional enactments that foster state regulation of health and safety, and the fact that state regulation of occupational health and safety is a regulation of general application that in no way interferes with the legislative goals of the NLRA . . . we hold that the federal labor laws do not preempt appellants' independent state law cause of action for wrongful discharge." (*Id.* at p. 865.)

Despite the unassailable holdings of *Balog* and *Paige*, ITS argues federal preemption occurred because IMREA *could have* presented its claims to the NLRB. According to ITS, "the critical inquiry . . . is . . . whether the controversy presented to the state court is identical to . . . that which could have been, but was not, presented to the Labor Board." If the claims could have been presented in the federal forum, ITS reasons, a state court runs the risk of interfering with the NLRB's authority by rendering a decision possibly different from that which the NLRB would have issued had it heard the matter. (*Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180, 197 [98 S.Ct. 1745, 1757-1758, 56 L.Ed.2d 209] [purpose of preemption is to prevent state court from interfering with NLRB].) Asserting that "[a]ll that is needed to invoke administration of the NLRA is collective action intended to affect terms and conditions of employment . . . [such as] issues of workplace safety," ITS contends the wrongful termination claims here were "identical to" allegations of an unfair labor practice because they involved collective action by 200 workers protesting working conditions. It is the numerosity of workers' complaints that, according to ITS, distinguished the circumstances here from those in *Balog* and *Paige*—which involved only one or two employees—and triggered the NLRB's exclusive jurisdiction.

In support of its argument, ITS cites *Platt* v. *Jack Cooper Transport, Co., Inc., supra,* 959 F.2d 91. There, the Eighth Circuit Court of Appeals found federal labor law preempted Cal-OSHA because safety violations could, and in that case in fact were, tendered to the NLRB as breaches of the parties' collective bargaining agreement. (*Id.* at p. 95.) Although the NLRB declined to hear the claims, the court found the employees' unsuccessful invocation of NLRB jurisdiction "highly relevant" in defeating juridical jurisdiction because the risk of interference with the NLRB after the NLRB refused to act was " 'obvious and substantial.' " (*Ibid.*)

We find ITS's reliance on *Platt* inapt for several reasons. First, the holding was limited to its facts—namely, unsuccessful invocation of NLRB jurisdiction for safety violations which breached an existing collective bargaining agreement. (*Platt* v. *Jack Cooper Transport, Co., Inc., supra,* 959 F.2d at p. 95.) Second, it is not a decision of the 9th Circuit Court of Appeals; the law

in the Ninth Circuit is stated in *Paige*. Third, *Platt*'s analysis is thin, not even mentioning, let alone discussing, *Balog*, and although it does refer to *Paige* in a footnote (959 F.2d at p. 95, fn. 7), the reference is unrelated to the issues at hand here. (*Ibid.* [distinguishing *Paige* because employee there did not try to invoke NLRB jurisdiction before pursuing state claim].) Indeed, the plaintiff in *Platt* failed to even argue health and safety claims were *not* preempted, suggesting the court decided the issue without sufficient briefing, thereby explaining its failure to adequately discuss *Balog* and *Paige*. As the court stated, "Platt has not argued that California's interest in protecting job-safety complainants justifies an exception to [federal labor law] preemption . . . . We normally do not consider issues not raised by the parties [but will do so here because of its importance]." (959 F.2d at p. 95.) For all these reasons, we choose not to follow *Platt*.

ITS's citation to *Buscemi* v. *McDonnell Douglas Corp.* (9th Cir. 1984) 736 F.2d 1348 does not advance its argument. There, the court held federal labor law preempted wrongful termination claims involving safety complaints. The court's analysis was cursory, however, with no discussion of the exception for local concerns. The court's entire discussion on preemption was the following: "[The plaintiff] contends that the district court erred when it ruled that it had no jurisdiction over his retaliatory discharge claim. [¶] [The plaintiff] alleged that he was discharged in retaliation for passing out petitions and voicing employee complaints. Activities to redress complaints about working conditions are 'concerted activities' protected by the National Labor Relations Act (NLRA). [Citation.] Violations of an employee's right to engage in concerted activities are within the exclusive jurisdiction of the NLRB. [Citations.] [¶] The district court correctly ruled that it had no subject matter jurisdiction over the retaliation claim, and deference to the 'exclusive competence' of the NLRB was proper." (*Id.* at p. 1350.) Given *Buscemi*'s conclusory discussion, we find *Paige* more accurately (as well as more recently) states the law in the Ninth Circuit. (See also *Saridakis* v. *United Airlines* (9th Cir. 1999) 166 F.3d 1272, 1278, citing *Paige* [". . . we have made clear that wrongful discharge claims based on public policy violations are not preempted by federal labor laws"].)

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. Disposition

The judgment is reversed and the matter is remanded. The trial court is directed to enter a new and different order dismissing only IMREA's fourth

---

*See footnote, *ante*, page 918.

cause of action against BNSF for violation of Business and Professions Code sections 17000 and 17200. The trial court is further directed to reconsider its denial of leave to file a third amended complaint in light of our findings that the National Labor Relations Act does not preempt IMREA's wrongful termination claims and that IMREA states a cause of action against BNSF for conspiracy for wrongful termination. IMREA to recover its costs on appeal.

Turner, P. J., and Grignon, J., concurred.

The petition of both appellant and respondents for review by the Supreme Court was denied October 27, 1999.