35 P.3d 389 (2001)
109 Wash.App. 347
Scott BRUNDRIDGE, Donald Hodgin, Jessie James, Clyde Killen, Pedro Nicacio, Shane O'Leary, Raymond Richardson, James Stull, Randall Walli, David Faubion, and Charles Cable, Appellants,
v.
FLUOR FEDERAL SERVICES INC. (formerly, Fluor Daniel Northwest, Inc.), a Washington Corporation, Fluor Hanford, Inc., (formerly, Fluor Daniel Hanford, Inc.), a Washington Corporation, Respondents,
Jerry Nichols, an individual and his marital community, David Foucault, an individual and his marital community, and Jim Holladay, an individual and his marital community, Defendants.
No. 20157-1-III.
Court of Appeals of Washington, Division 3, Panel Six.
December 4, 2001.
*392 John P. Sheridan, Dana L. Gold, Seattle, for Appellants.
William R. Squires, Lawrence C. Locker, Seattle, for Respondents. *390
*391 SCHULTHEIS, J.
We are concerned today with federal preemption of a state-law claim filed by workers who were parties to a collective bargaining agreement. In a recent decision, the United States Supreme Court held that the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16, requires enforcement of arbitration clauses in employment contracts, subject to certain exceptions. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). The 11 appellants here[1] were union pipe fitters working at the Hanford nuclear weapons facility as employees of Fluor Daniel Northwest, Inc. In 1999, they filed a complaint against Fluor Federal Services, Inc. and Fluor Hanford, Inc. (collectively referred to herein as "Fluor"),[2] and three administrative employees of Fluor. They alleged they were wrongfully terminated in retaliation for their whistleblowing activities. Before trial, Fluor moved for dismissal and a remand for arbitration. Based on Circuit City, the trial court granted Fluor's motion, but stayed the order pending review by this court.
On appeal, the pipe fitters contend the decision in Circuit City does not apply to collective bargaining agreements and at any rate does not apply to the arbitration provision at issue here. Additionally, the pipe fitters argue that Fluor is collaterally estopped from raising the issue of federal preemption based on § 301 of the Labor Management Relations Act, 1947 (29 U.S.C. § 185(a)), and contend state court jurisdiction over this case is not preempted by the National Labor Relations Act (29 U.S.C. §§ 157, 158). We find that the arbitration provision in the pipe fitters' collective bargaining agreement does not mandate arbitration for a claim of wrongful discharge in violation of public policy. We further find no federal preemption. Accordingly, we reverse and remand for trial.

FACTS
Because this is an appeal of a trial court's grant of a motion to dismiss, we review de novo, drawing all inferences from the facts in favor of the plaintiffs. In re Estate of Peterson, 102 Wash.App. 456, 462, 9 P.3d 845 (2000), review denied, 142 Wash.2d 1021, 16 P.3d 1266 (2001). According to the evidence presented by the pipe fitters, all were members of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local No. 598. As union members, they were parties to a collective bargaining agreement (CBA) that included a grievance procedure requiring binding arbitration for any disputes arising "out of the interpretation or application of this AGREEMENT." Clerk's Papers (CP) at 171.
In late May 1997, five of the pipe fitters refused to install valves on a pipeline running through a nuclear waste facility because they believed the valves were underrated for the degree of pressure that would be placed on them. Higher rated valves were soon provided, and the five pipe fitters installed them. A few days later, the five, along with two *393 other crewmembers, were laid off. After the pipe fitters were laid off, several other pipe fitters vocally supported the terminated workers. These pipe fitters lost their jobs in March and April 1998 and May 2000.
In June 1997, the union filed a grievance pursuant to the CBA protesting the layoffs of the first pipe fitters, but then withdrew the grievance in early February 1998 for lack of evidence that the CBA had been violated. The first laid-off pipe fitters were reinstated in March 1998, but they were again laid off in October and November 1998. All of the pipe fitters filed complaints with the Department of Labor, alleging that Fluor had retaliated against them in violation of the whistleblower protection provisions of the Energy Reorganization Act, 42 U.S.C. § 5851. In March 2000, however, they dismissed their administrative claims. They had filed suit in state court in 1999 for wrongful discharge in violation of public policy and for civil conspiracy. Eventually all of the appellants joined this lawsuit.
Fluor filed a notice of removal of civil action to United States District Court in August 1999, asserting federal jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. After reviewing the pipe fitters' complaint, the district court judge found that the claims did not require interpretation of the terms of the CBA and therefore were not preempted by § 301. Additionally finding that the plaintiffs' complaint did not assert a federal law claim and did not rest solely on federal public policies, the district court granted the plaintiffs' motion to remand to state court.[3] The civil conspiracy claim was dismissed on summary judgment in September 2000.[4] After extensive discovery and delay, trial was set to begin in May 2001.
In March 2001, the United States Supreme Court decided Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), which concluded that the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16, requires the enforcement of arbitration clauses in employment contracts other than the contracts of transportation workers. This decision overruled previous Ninth Circuit authority. Circuit City, 121 S.Ct. at 1306, 1311. On the basis of Circuit City, Fluor moved in April to dismiss or to stay the action in favor of arbitration. After a hearing on May 3, 2001, the trial court granted the motion from the bench, staying the case pending appeal to this court.

APPLICATION OF THE FEDERAL ARBITRATION ACT AFTER CIRCUIT CITY

The purpose of the Federal Arbitration Act (FAA) is to overcome the courts' historical reluctance to enforce agreements to arbitrate. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). To achieve this purpose, the FAA compels judicial enforcement of a wide range of arbitration agreements. 9 U.S.C. § 2; Circuit City, 121 S.Ct. at 1307. However, § 1 of the FAA excludes from the act's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C.A. § 1 (West 1999).
Prior to the decision in Circuit City, most federal courts of appeal held that this exception was limited to written arbitration agreements involving transportation workers. Only the Ninth Circuit interpreted the § 1 exception to exclude all contracts of employment from the reach of the FAA. Circuit City, 121 S.Ct. at 1307. Circuit City laid the issue to rest by holding that § 1 exempts from the FAA only contracts of employment of transportation workers. Id. at 1311. The employment agreement in Circuit City was an individual contract and the application of the FAA was in federal court. In dicta, the court referred to its earlier decisions in Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) and Allied-Bruce as enduring authority for the rule that *394 the FAA applies as well in state courts and preempts state antiarbitration laws to the contrary. Circuit City, 121 S.Ct. at 1312-13.
The pipe fitters argue here that although Circuit City and the FAA apply to employment contracts entered into by individuals, they do not apply to union-negotiated CBAs. But the very case cited for this assertion, Pryner v. Tractor Supply Co., 109 F.3d 354, 357 (7th Cir.1997), concludes after reviewing numerous court decisions that the FAA is generally applicable to CBAs. See also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 34, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (discussing the application of the FAA to a collective bargaining agreement arbitration clause in Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). We conclude as a matter of law that the FAA is applicable to the CBA in the present case. What remains is to determine whether the arbitration clause in the pipe fitters' CBA waives their rights to a judicial forum for the state-law claim.
Collective bargaining agreements, while beneficial in many respects to both the worker and the employer, may be less than optimum in meeting the individual needs of particular workers. With collective bargaining arbitration, the interests of the individual may be subordinated to the collective interests of all employees. Gilmer, 500 U.S. at 34, 111 S.Ct. 1647. In recognition of that inherent tension, federal courts have established that an arbitration clause in a CBA will not waive an employee's right to a judicial forum unless such a waiver is clear and unmistakable. Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 79-80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (right to a federal forum); Safrit v. Cone Mills Corp., 248 F.3d 306, 308 (4th Cir.) (right to federal forum), cert. denied, ___ U.S. ___, 122 S.Ct. 464, 151 L.Ed.2d 381 (2001).
A clear and unmistakable waiver of the right to a judicial forum can occur in two ways. Safrit, 248 F.3d at 308. First, the CBA may contain an explicit arbitration clause wherein the parties agree to submit all causes of action arising out of employment to arbitration. Id. Second, the agreement may have a general clause requiring arbitration under the employment agreement, coupled with a provision that makes it unmistakably clear that the statutes that are the basis for the asserted claims (e.g., discrimination statutes, occupational health and safety statutes, and whistleblowing statutes) are part of the agreement. Id. Further, in determining whether a particular claim is covered by an arbitration clause, it must be remembered that a labor arbitrator has authority solely to resolve questions of contractual rights, not to invoke public laws that conflict with the bargain between the parties. Gilmer, 500 U.S. at 34, 111 S.Ct. 1647.
In this case, the CBA grievance procedure requires binding arbitration for any disputes "aris[ing] out of the interpretation or application of this AGREEMENT[.]" CP at 171. As we shall see below, the pipe fitters' claim for wrongful discharge in violation of public policy does not require interpretation or application of any term in the agreement. Fluor cites no provision in the CBA wherein health and safety or whistleblowing statutes have been explicitly incorporated. See Rogers v. N.Y. Univ., 220 F.3d 73, 76 (2nd Cir.) (discrimination claims), cert. denied, 531 U.S. 1036, 121 S.Ct. 626, 148 L.Ed.2d 535 (2000). Further, this boilerplate arbitration provision is not sufficiently specific: it does not clearly and unmistakably waive the right to a judicial forum for tort claims arising independently of the CBA. Because the CBA does not contain a clear and unmistakable waiver of the pipe fitters' rights to a judicial forum for state-law claims, the trial court erred in dismissing the action and in remanding it for arbitration.
The pipe fitters additionally claim that Fluor waived its right to compel arbitration because it knew long before Circuit City that the Ninth Circuit had applied the FAA to compel arbitration of Title VII[5] employment claims. They also contend that Fluor did not bring this matter to arbitration in a timely manner. Waiver of a contractual right is disfavored and the party seeking *395 waiver bears a heavy burden of persuasion. Steele v. Lundgren, 85 Wash.App. 845, 852, 935 P.2d 671 (1997). To prove waiver of a right to arbitrate, a party must demonstrate that the other party knew of a right to compel arbitration, acted inconsistently with that right, and that prejudice has occurred. Id. at 849, 935 P.2d 671. Before Circuit City, the Ninth Circuit decided in Craft v. Campbell Soup Co., 177 F.3d 1083 (9th Cir. 1998) that the FAA did not apply to labor or employment contracts. The pipe fitters filed their lawsuit in 1999, after the decision in Craft and before Circuit City. Although they had pursued various administrative remedies before that time, they have not shown with any particularity when the right to compel arbitration should have attached during those negotiations. Accordingly, the trial court did not err in finding that Fluor did not waive its right to compel arbitration under the CBA.

FEDERAL PREEMPTION UNDER THE LABOR MANAGEMENT RELATIONS ACT AND THE NATIONAL LABOR RELATIONS ACT
Noting that this court may affirm on any basis supported by the record,[6] Fluor raises two additional arguments to affirm the trial court's decision. Both involve subject matter jurisdiction, and therefore may be addressed on appeal even though they were not raised in superior court. RAP 2.5(a)(1); Harting v. Barton, 101 Wash.App. 954, 960, 6 P.3d 91 (2000), review denied, 142 Wash.2d 1019, 16 P.3d 1266 (2001). Jurisdiction is a question of law reviewed de novo. Local Union I-369, Oil, Chemical & Atomic Workers Int'l Union v. Sandvik Special Metals Corp., 102 Wash.App. 764, 770, 10 P.3d 470 (2000), review denied, 143 Wash.2d 1006, 20 P.3d 944 (2001).
I. Section 301 of the Labor Management Relations Act. In the first of these jurisdictional arguments, Fluor contends the pipe fitters' claim is preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). Pursuant to § 301, federal law exclusively governs suits requiring interpretation of the terms of a CBA. Caterpillar Inc. v. Williams, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). State-law claims are preempted by § 301 if they are "substantially dependent" on the analysis of a CBA. Id. However, the bare fact that a bargaining agreement will be consulted during state-law litigation will not extinguish the claim. Sprewell v. Golden State Warriors, 266 F.3d 979, 990 (9th Cir. 2001). Moreover, a state-law claim is not preempted merely because a defense is raised based on the terms of a CBA. Id.
The pipe fitters' claim of wrongful termination in violation of public policy implicates a nonnegotiable right and consequently is not preempted by federal law. Huntley v. Frito-Lay, Inc., 96 Wash.App. 398, 401, 979 P.2d 488 (1999), cert. denied, 531 U.S. 818, 121 S.Ct. 57, 148 L.Ed.2d 24 (2000); Wilson v. City of Monroe, 88 Wash.App. 113, 117-18, 943 P.2d 1134 (1997). Further, the right does not arise from or depend on interpretation of the CBA. Smith v. Bates Technical College, 139 Wash.2d 793, 803, 991 P.2d 1135 (2000). Because it is independent of the contractual agreement between the pipe fitters' union and Fluor, a claim of wrongful termination in violation of public policy is not subject to § 301 preemption. Id.; Wilson, 88 Wash.App. at 119, 943 P.2d 1134.
In any event, Fluor is estopped from raising this issue because it is identical to the issue Fluor raised in federal district court when attempting to assert federal jurisdiction. Collateral estoppel, also called issue preclusion, prevents relitigation of an issue after a party has had a full and fair opportunity to litigate it. Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 262, 956 P.2d 312 (1998). The party asserting the doctrine must show that (1) the issue decided in prior adjudication is identical with the one currently raised; (2) the prior adjudication ended in a final judgment on the merits; (3) the party raising the issue was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine would not work an injustice. Id. at 263, 956 P.2d 312; Spahi v. Hughes-Northwest, Inc., 107 Wash.App. 763, 774, 27 P.3d 1233, 33 P.3d 84 (2001).
*396 Fluor contends it is not estopped from raising the issue of § 301 preemption because the federal district court was only concerned with jurisdictional issues and did not decide the case on its merits. True, but the issue is jurisdictional and the district court entered a final judgment that concluded the pipe fitters' claim was not preempted by § 301. The § 301 issue was identical in district court, the district court adjudication ended in a final judgment on the merits of that action, Fluor was a party to the action, and Fluor fails to show how application of collateral estoppel would work an injustice here.
II. The National Labor Relations Act. In its second jurisdictional attack, Fluor contends the National Labor Relations Act (NLRA), 29 U.S.C. §§ 157 and 158, preempts the application of Washington law to this controversy. The NLRA establishes workers' rights to organize and engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" 29 U.S.C.A § 157 (West 1998). The act further provides that it is unlawful for employers to interfere with the exercise of those rights. 29 U.S.C. § 158. Usually the National Labor Relations Board (NLRB) is given exclusive jurisdiction over controversies even arguably involving unfair labor practices under the NLRA. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244-45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Hume v. Am. Disposal Co., 124 Wash.2d 656, 662, 880 P.2d 988 (1994). However, two exceptions exist, for matters that "touch[ ] interests... deeply rooted in local feeling and responsibility" or where the regulated activity is merely a peripheral concern of federal labor law. Garmon, 359 U.S. at 244, 79 S.Ct. 773.
The pipe fitters contend their joint claim and their attempts to seek administrative redress for their wrongful termination do not constitute "concerted activities" under the NLRA. Although the term "concerted activities" is not defined in the NLRA, employees acting together and individuals acting as representatives of other employees are considered engaged in concerted activities for the purposes of the NLRA. NLRB v. Portland Airport Limousine Co., 163 F.3d 662, 665 (1st Cir.1998). Because our concern is whether the actions of the pipe fitters are "arguably" subject to the NLRA, we find it at least arguable that the pipe fitters engaged in concerted activities for mutual aid and protection in the pursuit of their claim.
Even so, however, the pipe fitters' state-law claim for wrongful discharge in violation of public policy touches matters of clear local interest. In Hume, four former employees brought an action alleging employer retaliation for assertion of wage claims under RCW 49.46.100. The court found that the employer retaliation regulated by the statute touched a deeply rooted local concern and therefore fell under the Garmon exception. Hume, 124 Wash.2d at 664, 880 P.2d 988. As the court noted, the NLRB inquiry would focus on whether the overtime wage claims were protected concerted activity, while the state cause of action focused instead on whether the employees were discharged in retaliation for their overtime claims. Id. at 664-65, 880 P.2d 988. Consequently, the state-law claim was different from that which could have been, but was not, presented to the NLRB. Id. at 665, 880 P.2d 988.
Washington has a substantial interest in regulating discriminatory employment practices, and this regulation does not threaten undue interference with federal labor law. Delahunty v. Cahoon, 66 Wash. App. 829, 839, 832 P.2d 1378 (1992) (citing Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 188, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978)). Fluor argues that cases applying the Garmon exception are based on state statutes and involve only private sector workplaces, citing Hume; Delahunty; Inter-Modal Rail Employees Ass'n v. Burlington N. & Santa Fe Ry. Co., 73 Cal.App.4th 918, 87 Cal. Rptr.2d 60 (1999); and Paige v. Henry J. Kaiser Co., 826 F.2d 857 (9th Cir.1987). These are distinctions without significance. We have already established that no term of the CBA must be interpreted in the resolution of the pipe fitters' claim. Further, the elements for proving wrongful discharge in violation of public policy include (1) existence of a clear public policy; (2) evidence that *397 discouraging the conduct in which the plaintiffs are engaged would jeopardize the public policy; (3) proof that the public-policy-linked conduct caused the dismissal; and (4) no overriding justification for the dismissal. Ellis v. City of Seattle, 142 Wash.2d 450, 459, 13 P.3d 1065 (2000). The clarity element requires evidence that the employer's conduct contravened "`the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.'" Id. (quoting Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 232, 685 P.2d 1081 (1984)). In establishing their claim, the pipe fitters will necessarily cite constitutional, statutory, and/or regulatory laws evidencing Washington's interest in protecting the health and safety of its workers and citizens.
Ultimately, the claim of wrongful discharge in violation of public policy is different from any claim that could have been brought before the NLRB. The claim does not implicate collective bargaining or unionization. See Inter-Modal, 87 Cal.Rptr.2d at 64. And the claimed violations of Washington's health and safety laws are not even arguably unfair labor practices. Id. Finally, Fluor's alleged conduct in terminating employees for refusing to install unsafe valves in a nuclear waste facility, and in terminating employees who supported those who refused to install the valves, clearly touches on interests deeply rooted in local feeling and responsibility. Id. Consequently, the Garmon exceptions apply to prevent federal preemption of the pipe fitters' claim.

ATTORNEY FEES
The pipe fitters request attorney fees and costs on appeal. Pursuant to RCW 49.48.030, a party who successfully recovers judgment for wages or salary owed is entitled to reasonable attorney fees assessed against the employer or former employer. In this case, however, the pipe fitters have not yet obtained a judgment for owed wages. See Cohn v. Dep't of Corrs., 78 Wash.App. 63, 70, 895 P.2d 857 (1995). Consequently, the request for attorney fees under this statute is premature.

CONCLUSION
To summarize, we conclude that Circuit City and the FAA generally apply to CBAs. However, we further conclude that the FAA does not require arbitration in this case because the arbitration clause does not clearly and unmistakably waive the pipe fitters' right to a judicial forum for their claim of wrongful discharge in violation of public policy. We further hold that federal jurisdiction under the LMRA and the NLRA does not preempt this claim.
Reversed and remanded for trial.
WE CONCUR: KURTZ, C.J., and SWEENEY, J.
NOTES
[1] The 11 appellants are: Scott Brundridge, Donald Hodgin, Jessie Jaymes (we note that Ms. Jaymes's name was incorrectly spelled in the complaint), Clyde Killen, Pedro Nicacio, Shane O'Leary, Raymond Richardson, James Stull, Randall Walli, David Faubion, and Charles Cable.
[2] Fluor Daniel Northwest, Inc. is now called Fluor Federal Services, Inc. The prime contractor that operates the Hanford facility for the Department of Energy is Fluor Hanford, Inc. (formerly Fluor Daniel Hanford, Inc.), a wholly owned subsidiary of Fluor, Inc. (formerly Fluor Hanford, Inc.). Fluor Daniel Northwest, a sister corporation of Fluor Hanford, served as a construction subcontractor to Fluor Hanford and other contractors at the Hanford site.
[3] The pipe fitters' motion to take judicial notice of documents filed in the removal proceedings is granted.
[4] After the elimination of the civil conspiracy claim, Fluor Hanford was dismissed as a party. The remaining claim for wrongful discharge is directed solely at Fluor Daniel Northwest, Inc., now known as Fluor Federal Services, Inc.
[5] Title VII of the Civil Rights Act of 1964, codified as 42 U.S.C. § 2000e-3(a).
[6] Backlund v. Univ. of Wash., 137 Wash.2d 651, 670, 975 P.2d 950 (1999).