COURT OF APPEALS DIV 1
2018 FEB -5 AM 11: 23


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| RONALD COX, an individual, and on behalf of others similarly situated, | ) ) ) ) | No. 76143-9-I |
| Respondent, | ) ) ) ) | |
| v. | ) ) | |
| THE KROGER COMPANY, an Ohio corporation, FRED MEYER STORES, INC., doing business as QUALITY FOOD CENTERS (aka QFC), | ) ) ) ) ) ) | PUBLISHED OPINION FILED: February 5, 2018 |
| Appellants. | ) ) ) | |

VERELLEN, C.J. — Ronald Cox, a former Quality Food Centers Inc. (QFC) employee, filed this class action challenging QFC's policy of rounding hourly employees' clocked-in time to the nearest quarter hour. Specifically, he contends QFC intentionally manipulated the application of this policy to result in underpayment of wages.

QFC appeals the trial court's denial of the motion to compel arbitration. Because the collective bargaining agreements (CBAs) governing Cox's employment do not clearly and unmistakably waive his right to a judicial forum for

statutory wage claims, the arbitration provision does not encompass his claims, and the trial court did not err in denying QFC's motion to compel arbitration.

QFC also seeks review of the trial court's earlier determination that Cox's claims were not preempted by section 301 of the Labor Management Relations Act of 1947 (LMRA).[1] Because the interlocutory partial summary judgment order concerning preemption does not prejudicially affect the arbitration order designated in QFC's notice of appeal, the merits of the undesignated preemption ruling are not before us.

We also deny QFC's motion to take judicial notice because the documents at issue relate solely to the question of waiver of the right to arbitrate, and we need not reach waiver. We deny Cox's motion to dismiss this appeal as moot because the appeal presents debatable issues. For the same reason, we deny Cox's request for fees based on the argument that QFC's appeal is frivolous.

Therefore, we affirm.

## FACTS

Cox was employed by QFC between October 2011 and February 2014. He worked at the QFC in Camas, Washington, and later transferred to the Moreland QFC in Portland, Oregon.

QFC is a supermarket chain with locations in Washington and Oregon. Between 2000 and 2014, QFC required hourly employees to use a time card to

---

[1] 29 U.S.C. § 185.

clock in and out at the beginning and end of their shifts. QFC employed a rounding policy that provided:

- Time is credited by the quarter hour. There is a seven minute grace period which rounds the eighth minute to the quarter hour. (Example: An employee is scheduled to work at 7:00 o'clock. The employee punches in at 7:08. The 7:08 punch will round to 7:15. If the employee punches in at 7:07 the punch will round to 7:00.).

  . . . .

- It is the employee's responsibility to follow these procedures, as it will ensure they are paid accurately and on a timely basis.[2]

  The rounding policy is not contained in or referred to by the CBAs.

  In July 2014, Cox and another former QFC employee, Sue Jin Yi, filed the current class action challenging QFC's rounding policy.[3] The proposed class included hourly QFC employees in Washington and Oregon.

  United Food and Commercial Workers Union Local 555 represents QFC employees in Washington and Oregon. Cox's employment with QFC was covered by one CBA while he worked at the QFC in Camas, Washington,[4] and another while he worked at the Moreland QFC in Portland, Oregon.[5] The two CBAs are identical as to all the relevant provisions for this appeal.

  In May 2015, the trial court denied QFC's motion to dismiss Cox's second and third causes of action based on chapter 49.52 RCW and Oregon Revised

---

[2] Clerk's Papers (CP) at 250.

[3] Yi was dismissed in June 2015.

[4] Referred to as the Clark County CBA.

[5] Referred to as the Portland CBA.

Statutes section 652.120 (ORS) as preempted under section 301 of the LMRA. In November 2016, the court denied QFC's motion to compel arbitration of these same claims.

QFC appeals.

## ANALYSIS

### I. Nature of Claims

As a preliminary matter, it is critical to our analysis to understand the claims actually asserted by Cox. The first amended complaint specifically alleges QFC's rounding policy "deprives [hourly] employees of regular and overtime pay they have earned."[6] This appeal concerns only Cox's second cause of action, based on chapter 49.52 RCW, and his third cause of action, based on ORS section 652.120. The core issue of this appeal is whether these claims are statutory or contractual.

RCW 49.52.050(2) provides that "[a]ny employer or officer . . . who . . . [w]ilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" is in violation of the statute. The purpose of the statute is to "ensure that the employee realizes the full amount of his or her wages and that the employer does not evade his or her obligation to pay wages . . . calculated to effect a rebate of part of them."[7]

---

[6] CP at 499.

[7] Jumamil v. Lakeside Casino, LLC, 179 Wn. App. 665, 687, 319 P.3d 868 (2014).

Pursuant to ORS section 652.120(1), "[e]very employer shall establish and maintain a regular payday, at which date the employer shall pay all employees the wages due and owing to them." The essence of a claim under this statute is "an assertion that one has not received payment from one's employer of 'wages due and owing.'"[8]

Cox contends the claims are statutory wage claims. Cox asserts the rounding policy in conjunction with QFC's other policies and procedures resulted in employees being "consistently and systematically deprived of pay for all straight time and overtime hours they actually work."[9] Specifically, Cox contends QFC's various policies concerning timekeeping and attendance have the impact of inhibiting conduct that would cause the employee to benefit from the rounding policy and promoting conditions that allow the employer to benefit. Commentators have analogized this wage dispute theory challenging unfair rounding policies to casinos where the odds of winning are skewed to favor the "house."[10]

QFC takes a diametrically opposed view, that despite being labeled as statutory wage claims, the claims are contractual because Cox seeks damages

---

[8] Arken v. City of Portland, 351 Or. 113, 145, 263 P.3d 975 (2011) (quoting ORS § 652.120(1)).

[9] CP at 503.

[10] Elizabeth Tippett, Charlotte S. Alexander & Zev. J. Eigen, *When Timekeeping Software Undermines Compliance*, 19 YALE J.L. & TECH. 1, 38 (2017) ("While courts do not permit overtly unfair rounding rules, facially neutral rounding rules can act like casino odds when they interact with employer attendance policies—consistently favoring 'the house.'").

only available under the CBAs. A claim for unpaid wages necessarily requires a computation of the regular rate of pay multiplied by the amount of compensable time worked. QFC argues Cox's claims are contractual because the CBA is the source of Cox's regular rate of pay and the definition of "compensable time."

Specifically, as to the Washington law claim, QFC points to an interrogatory answer by Cox referring to claimed damages at a rate of $12 per hour. Because Cox's standard rate when working in Washington was less than $12 per hour, QFC infers that he must be depending on some form of premium wage rate contained in the CBAs. But the interrogatory answer does not constitute a binding admission by Cox that his Washington claim depends on the application of a premium wage rate contained in the CBAs. In fact, he denies his claims include any such rates.[11]

QFC also contends that Cox's wage claims under Oregon and Washington law necessarily require a determination of the definition of "compensable time." Although the rounding policy is not contained in the CBAs, QFC argues the policy controls the calculation of wages. Specifically, QFC relies on Cox's acknowledgement of the rounding policy, declarations from human resource executives about the lack of complaints concerning the rounding policy, and general declarations from QFC executive employees regarding QFC's historical

---

[11] See Resp't's Br. at 5 ("Plaintiff does not seek—and has never sought—damages calculated using any premium rates or shift premiums provided for in any collective bargaining agreements.").

practice of compensating employees based on the rounded time. But under a claim for unpaid wages due to the alleged manipulation of the facially neutral rounding policy, the question is not whether the rounding policy exists, the question is whether QFC's policies and practices have the impact of undercompensating the employees.

If an employer intentionally used "bad math" to manipulate the computation of wages owed to employees, an employee would possess a statutory claim for the withholding of wages. Similarly, intentionally manipulating the application of a facially neutral rounding policy used to compute wages owed, resulting in underpayment, runs afoul of Washington's and Oregon's wage and hour statutes. Cox's claims qualify as statutory wage claims.

## II. Motion To Compel Arbitration

QFC first challenges the trial court's denial of the motion to compel arbitration.

We review a trial court's denial of a motion to compel arbitration de novo.[12]

Generally, the Federal Arbitration Act (FAA)[13] applies to collective bargaining agreements.[14] "The purpose of the [FAA] is to overcome the courts'

---

[12] Otis Hous. Ass'n, Inc. v. Ha, 165 Wn.2d 582, 586, 201 P.3d 309 (2009).

[13] 9 U.S.C. §§ 1-14.

[14] See Brundridge v. Fluor Fed. Servs., Inc., 109 Wn. App. 347, 355, 35 P.3d 389 (2001) ("FAA is applicable to the CBA in the present case."); Adler v. Fred Lind Manor, 153 Wn.2d 331, 341, 103 P.3d 773 (2004) (FAA "applies to all employment contracts"). Notably, the Washington uniform arbitration act does not apply to employment contracts. RCW 7.04A.030(4).

historical reluctance to enforce agreements to arbitrate."[15] This court must apply federal substantive law to any arbitration agreement within the coverage of the FAA.[16] In determining whether to enforce an arbitration provision, this court must consider (1) "whether the arbitration agreement is valid" and (2) "whether the agreement encompasses the claims asserted."[17]

An arbitration agreement does not encompass statutory claims unless the waiver of an employee's right to judicial forum for such claims is "clear and unmistakable."[18] A clear and unmistakable waiver can occur if the CBA contains "a general clause requiring arbitration under the employment agreement, coupled with a provision that makes it unmistakably clear that the statutes that are the basis for the asserted claims . . . are part of the agreement."[19]

Here, the grievance and arbitration procedure is contained in article 19 of the Clark County CBA and the Portland CBA. The procedure applies to "[a]ny grievance or dispute concerning the application or interpretation of this Agreement."[20] Because article 19 does not identify any specific statutes or make

---

[15] Brundridge, 109 Wn. App. at 354.

[16] Schuster v. Prestige Senior Mgmt., LLC, 193 Wn. App. 616, 627, 376 P.3d 412 (2016).

[17] Wiese v. CACH, LLC, 189 Wn. App. 466, 474, 358 P.3d 1213 (2015).

[18] See Brundridge, 109 Wn. App. at 355 ("[F]ederal courts have established that an arbitration clause in a CBA will not waive an employee's right to a judicial forum unless such a waiver is clear and unmistakable.").

[19] Id.

[20] CP at 64 (Portland CBA), 188 (Clark County CBA).

any general reference to statutory wage claims, it does not make it unmistakably clear that claims under chapter 49.52 RCW or ORS section 652.120 are subject to arbitration.

QFC argues the separate wage claims provisions found in article 6 of the CBAs support arbitration. Article 6 states, "All claims for back wages or overtime not paid must be presented through the Union to the Employer."[21] But the wage claims provisions contain no arbitration clause and no reference to article 19. Article 6 also sets a different deadline for filing a claim than a grievance subject to the article 19 arbitration provision.[22] In other sections of the CBAs, the parties included express references to article 19 illustrating the clear intent to apply the arbitration procedures to such provisions.[23] The failure to include a similar cross-reference to article 19 in the wage claim provision is inconsistent with an objective manifestation of intent that the arbitration procedure of article 19 applies to wage

---

[21] CP at 45-46 (Portland CBA), 173 (Clark County CBA).

[22] See CP at 45 (Portland CBA), 173 (Clark County CBA) ("All claims for back wages or overtime not paid must be presented through the Union to the Employer in writing within thirty (30) days of the date the employee is paid for the period in which back wages or overtime is claimed."); see also CP at 64 (Portland CBA), 188 (Clark County CBA) ("Any grievance or dispute . . . shall be presented in writing by the aggrieved Party to the other Party within twenty (20) days from the date of the occurrence first giving rise to such grievance or dispute, except that in the cases of discharge the grievance must be presented within ten (10) calendar days.").

[23] See CP at 64 (Portland CBA), 188 (Clark County CBA) ("The Employer and the Union agree that discharges will be made fairly and impartially, but in the event a protest of a discharge is lodged with the Employer, then the provisions of Article 19 . . . shall be invoked.").

claims under article 6.[24] The wage claim provisions also fail to identify any specific statutes covered by the agreement. Absent any reference to specific statutes or article 19, the article 6 CBA wage claim provisions do not support arbitration.

The CBAs do not clearly and unmistakably waive the right to a judicial forum for Cox's statutory wage claims. Therefore, the CBA arbitration provision does not encompass Cox's claims and the trial court did not err in denying the motion to compel arbitration. Given this conclusion, we do not need to address Cox's alternative arguments concerning waiver and unconscionability.

## III. Preemption

As to the extensive arguments concerning preemption under section 301 of LMRA, that issue is not before us. Preemption was addressed by the trial court when it denied QFC's motion for partial summary judgment in May 2015.

"RAP 2.2 determines whether a particular superior court decision is appealable."[25] Under RAP 2.2(a)(3), a party may appeal "[a]ny written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action." A ruling denying a motion to compel arbitration is appealable as a matter of right under RAP 2.2(a)(3) "because

---

[24] See Syrovy v. Alpine Res., 122 Wn.2d 544, 550, 859 P.2d 51 (1993) ("If the parties had wanted to make logging of the various sections optional, they would have used specific language to that effect.").

[25] Munden v. Hazelrigg, 105 Wn.2d 39, 42, 711 P.2d 295 (1985).

it involves issues wholly separate from the merits of the dispute and because an effective challenge to the order is not possible without an interlocutory appeal."[26]

Here, the trial court's interlocutory partial summary judgment order concerning preemption is not appealable as a matter of right because the order does not discontinue the action or prevent final judgment. QFC did not seek discretionary review of the preemption order within 30 days of its entry, and there was no CR 54(b) certification or supporting findings of no just cause for delay.

Neither party has addressed whether an appeal as a matter of right from an order denying a motion to compel arbitration opens the door to include any and all prior interlocutory rulings. But even assuming the preemption ruling could be included in an appeal from a separate motion to compel arbitration, the preemption order was not designated in QFC's notice of appeal.

We will review an undesignated order only if "the order or ruling prejudicially affects the decision designated in the notice."[27] Our Supreme Court has interpreted the term "prejudicially affects" to turn on whether the order designated in the notice of appeal would have occurred absent the other order.[28] "'The issues

---

[26] Stein v. Geonerco, Inc., 105 Wn. App. 41, 44, 17 P.3d 1266 (2001).

[27] RAP 2.4(b).

[28] Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 134, 750 P.2d 1257 (1988); Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 380, 46 P.3d 789 (2002).

in the two orders must be so entwined that to resolve the order appealed, the court must consider the order not appealed.'"[29]

The consequence of section 301 preemption is to require an employee to exhaust contractual remedies.[30] As a result, section 301 of the LMRA is in large part a mechanism "to assure that agreements to arbitrate grievances would be enforced."[31] Although there is overlap in the consequences of rulings concerning preemption and arbitration, the legal questions underlying the doctrine of preemption and the standards applicable to a CBA arbitration provision are not so entwined that we must consider the undesignated preemption ruling.

Even if a claim was preempted by section 301, there would not be a contractual remedy for the employee to exhaust if the arbitration provision does not extend to the particular claim. Because we have determined the arbitration clause does not encompass Cox's statutory wage claims, the preemption decision does not prejudicially affect the arbitration order, and that ruling is not currently before us.[32]

---

[29] Foster v. Gilliam, 165 Wn. App. 33, 45, 268 P.3d 945 (2011) (quoting Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 105 Wn. App. 813, 819, 21 P.3d 1157 (2001), remanded, 146 Wn.2d 370).

[30] Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965).

[31] Livadas v. Bradshaw, 512 U.S. 107, 122, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994).

[32] QFC could potentially appeal the interlocutory preemption ruling as a matter of right from a final judgment resolving all claims as to all parties. See RAP 2.2(a)(1) (a party may appeal from the "final judgment entered in any action or proceeding").

QFC also contends this court may address preemption under RAP 2.5(a) because it implicates the trial court's jurisdiction. But in <u>Wingert v. Yellow Freight Systems, Inc.</u>, our Supreme Court rejected the application of RAP 2.5(a) to a section 301 preemption argument because "[t]he preemptive effect of federal law is not an issue that satisfies any of the exceptions to [RAP 2.5(a)]."[33] The 2015 order denying section 301 preemption is not before us in this appeal of the 2016 order denying QFC's motion to compel arbitration.

## IV. Cox's Motion To Dismiss

Cox contends QFC's appeal is moot and asks this court to dismiss.

Pursuant to RAP 18.9(c), an appellate court may dismiss a case if it is moot.[34] "A case is moot when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief."[35]

This appeal is not moot because if we had determined the trial court erred in denying the motion to compel arbitration, we could have provided effective relief to QFC.

We deny Cox's motion to dismiss.

---

[33] 146 Wn.2d 841, 853, 50 P.3d 256 (2002).

[34] <u>Spokane Research & Def. Fund v. City of Spokane</u>, 155 Wn.2d 89, 99 117 P.3d 1117 (2005).

[35] <u>Id.</u>

## V. Timeliness

Cox contends QFC's appeal is untimely. Cox argues QFC's 2016 motion to compel arbitration was an untimely motion for reconsideration of the trial court's preemption decision in the 2015 partial summary judgment order.

To be timely, an appeal must be filed within 30 days of entry of the order being appealed.[36] Although a timely motion for reconsideration will extend the time for appeal, an untimely motion for reconsideration does not toll the 30-day deadline.[37]

Here, QFC filed a notice of appeal of the arbitration order on December 5, 2016. Cox does not provide any compelling authority to advance his argument that the arbitration motion was an untimely motion for reconsideration of the 2015 order. The two motions sought different relief and required the court to consider different bodies of law.

We conclude QFC's appeal is timely because the notice of appeal was filed within 30 days of the entry of the order denying arbitration.

## V. QFC's Motion To Take Judicial Notice

QFC asks this court to take judicial notice of pleadings filed in the removal proceedings before the United States District Court for the Western District of Washington. Specifically, QFC offers Cox's motion to remand, QFC's opposition

---

[36] RAP 5.2(a)(1).

[37] CR 59; RAP 5.2(e); Schaefco, Inc. v. Columbia River Gorge Com'n, 121 Wn.2d 366, 368, 849 P.2d 1225 (1993).

to remand, Cox's reply, and accompanying declarations and exhibits. But QFC offers the pleadings in response to Cox's argument concerning waiver of QFC's right to arbitration.[38] Given our conclusion that the arbitration provision does not encompass Cox's claims, we need not address waiver.[39] We deny QFC's motion to take judicial notice.

## VI. Fees on Appeal

Cox seeks an award of fees under RAP 18.9(a), arguing QFC's appeal is frivolous.

RAP 18.9(a) permits this court to award a party attorney fees when the opposing party files a frivolous appeal.[40] "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal."[41]

---

[38] Appellant's Reply Br. at 19 ("Cox argues that QFC 'waived any right to compel arbitration' because it actively litigated the case before it moved to compel arbitration. As examples of what Cox deems was QFC's 'aggressive litigation,' Cox faults QFC for . . . removing the case . . . . But with these waiver arguments, Cox misstates the record and omits key details." (citation omitted) (quoting Resp't's Br. at 35)).

[39] Additionally, in appellate courts, ER 201, governing judicial notice, must be read in light of RAP 9.11. Spokane Research & Def. Fund, 155 Wn.2d at 98. QFC has not addressed the criteria of RAP 9.11.

[40] Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004).

[41] Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010).

QFC's appeal is not frivolous because it presents debatable issues. We deny Cox's request for fees on appeal.

Therefore, we affirm.

WE CONCUR: